

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00073-CV

Alison **MAYNARD** and Richard Carlisle,
Appellants

v.

Jacob **ZIMMERMAN**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-12586
Honorable Norma Gonzales, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                 Adrian A. Spears II, Justice
                 H. Todd McCray, Justice

Delivered and Filed: March 5, 2025

AFFIRMED

Appellants Alison Maynard and Richard Carlisle, proceeding pro se, appeal from the trial court's order granting appellee Jacob Zimmerman's special appearance and dismissing, without prejudice, the three claims that appellants brought against Zimmerman. In one issue, appellants contend that the trial court erred because their pleading demonstrated that the trial court possessed specific jurisdiction over Zimmerman. We affirm.

### I. BACKGROUND

Zimmerman is a resident of and licensed attorney in the state of Minnesota. In 2019, Leonard Pozner, represented by Zimmerman, asserted a claim of defamation against James Fetzer in Dane County, Wisconsin. Zimmerman, through his representation, came to believe that Maynard, a resident of Bexar County, Texas at the time, provided legal assistance to Fetzer in his defense of Pozner's Wisconsin defamation claim. Zimmerman's belief prompted him to learn that Maynard held a suspended Colorado law license while the Pozner's Wisconsin defamation case was pending. Zimmerman reported Maynard's conduct to the Colorado Supreme Court's Office of Attorney Regulation ("OARC"). Thereafter, the OARC instituted disciplinary proceedings. Maynard was served at her residence in Bexar County with the OARC's disciplinary complaint. The disciplinary proceedings resulted in Maynard's disbarment from the Colorado bar.

In the underlying proceeding, Maynard and Carlisle, a resident of the state of Missouri, asserted claims of intentional infliction of emotional distress and an unspecified claim of "conspiracy" against, among others, Zimmerman, in a state district court in Bexar County. Maynard and Carlisle also asserted a claim under section 2520(a), Title 18 of the United States Code[1] regarding emails. Zimmerman filed a special appearance and an affidavit in support of it, and Maynard filed a written response. The trial court granted Zimmerman's special appearance, and it dismissed Maynard and Carlisle's claims without prejudice. On the same date, the trial court

---

[1] Section 2520(a), Title 18 of the United States Code provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).

severed appellants' claims against Zimmerman, thereby making its order granting Zimmerman's special appearance final. Appellants timely appeal.

## II. DISCUSSION

Appellants generally argue that Zimmerman's direction of torts to a Texas resident such as Maynard is sufficient to establish specific jurisdiction.

## A. Standard of Review

Whether the trial court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident defendant within the provisions of the [Texas] long-arm statute." *Id*. at 793. However, when a defendant files a special appearance, he assumes the burden of negating all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software*, 83 S.W.3d at 793. The trial court determines the special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. TEX. R. CIV. P. 120a(3).

Where, as here, the trial court does not issue findings of fact and conclusions of law, we imply all findings of fact that are necessary to support the trial court's ruling and that are supported by the evidence. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). However, when the appellate record includes the reporter's[2] and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 795.

---

[2] No reporter's record is before us.

**B.      Minimum Contacts & Specific Jurisdiction**

Where, as here, appellants allege specific jurisdiction,[3] we focus our minimum-contacts analysis on the relationship among Zimmerman, the forum, and the litigation.  *Moki Mac*, 221 S.W.3d at 575–76.  "Specific jurisdiction is established on a claim-by-claim basis unless all the asserted claims arise from the same forum contacts." *Cent. Petroleum Ltd. v. Geoscience Res. Recovery, LLC*, 543 S.W.3d 901, 911 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).  To exercise specific jurisdiction, (1) Zimmerman must have engaged in some act by which he "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State," and (2) Maynard and Carlisle's claims must "arise out of or relate to" those forum contacts.  *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021).

**1.      Purposeful Availment**

In determining whether Zimmerman's contacts amount to purposeful availment so as to satisfy the first element of the test for specific jurisdiction, (1) only Zimmerman's contacts with the forum are relevant, not another person's unilateral activity; (2) the contacts must be purposeful rather than random, fortuitous, or attenuated; and (3) Zimmerman must seek some benefit, advantage, or profit by availing himself of the forum state.  *Moki Mac*, 221 S.W.3d at 575.  We focus on the quality and nature of Zimmerman's contacts, rather than their number.  *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009).

We do not determine the underlying merits of the claim in order to decide whether personal jurisdiction exists.  *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 562 (Tex. 2018).

---

[3] Appellants' brief states that they "will not argue that the court has general jurisdiction over Mr. Zimmerman, because it has specific jurisdiction."

Thus, the purposeful-availment inquiry cannot be satisfied merely by alleging that the defendant directed a tort from outside the forum against a resident. *See id.*

### 2.    Relatedness

Turning to relatedness, which is the second element of the test for specific jurisdiction, a plaintiff's claims "arise out of or relate to" a nonresident defendant's contacts with the forum if there is a substantial connection between those contacts and the operative facts of the litigation. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 347 (Tex. 2023). Stated differently, there must be an "'affiliatio[n] between the forum and the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)) (first alteration in original).

### C.    Appellants' Pleaded Allegations & Zimmerman's Affidavit

In the "General Allegations" section of appellants' live petition, they allege in relevant part:

> [Jacob Vos, an attorney with the OARC,] included quotations in his [bar disciplinary] complaint which came from private emails I[4] had exchanged in August 2018 with Richard Carlisle and Wolfgang Halbig ("the Halbig emails"). Halbig, Carlisle, and I were involved in researching the so-called Sandy Hook school shooting which reportedly took place Dec. 14, 2012, in Newtown, Connecticut.
>
> The Halbig emails were illegally intercepted.

Appellants' live petition alleges that the trial court possessed personal jurisdiction because:

> Defendants are subject to the court's personal jurisdiction by having transacted business in Texas by initiating, personally serving, and proceeding against Texas resident Maynard in an administrative matter in Colorado; by intercepting,

---

[4] Maynard and Carlisle jointly signed their live petition as pro se plaintiffs. From context we gather that the petition's references to "I" are to Maynard.

disclosing, and using private emails belonging to both plaintiffs; or by committing the torts of defamation and invasion of privacy against Maynard.

Appellants' live petition asserts three claims that are relevant to our jurisdictional analysis:

[**Damages relating to intercepted emails**] Zimmerman lied to Vos about how he obtained the emails. Zimmerman knew that Pozner had illegally intercepted, or caused to be intercepted, the Halbig emails from the account of Halbig, Carlisle, or me.

[**Intentional infliction of emotional distress asserted by only Maynard**] Zimmerman jointly planned and assisted Pozner in this vicious campaign to destroy me. [] The conduct of Pozner, Maguire,[5] and Zimmerman has been and continues to be extreme and outrageous, and has caused me severe emotional distress, as they intended. I am entitled to actual and punitive damages for their targeting of me.

[**"Conspiracy"**] All defendants in this matter, along with many not named, a number of whom are governmental officials, agreed on a course of conduct which was both illegal and tortious, with the goal of ruining responsible citizens seeking the truth about Sandy Hook, who include Richard Carlisle and me. They committed numerous overt acts in furtherance of their conspiracy, as set forth in the preceding paragraphs, including hacking our private emails, forcing me to defend against bogus disciplinary charges, imposing disbarment in violation of every legal precept applicable, pasting [sic] personal and false information on the web, and more. [] Both Carlisle and I have suffered damages, emotional as well as financial, at defendants' hands from exercising our right to communicate privately with each other, as well as to research and speak freely about issues of public importance, as detailed herein.

In support of Zimmerman's special appearance, he filed an affidavit wherein he averred in

relevant part:

I reside in Saint Paul, Minnesota.

I am an attorney. I have been licensed to practice law in Minnesota since 2003 and have, at all times, remained in good standing. I am also licensed to practice law in Colorado and have, at all time[s], remained in good standing. I am not licensed to practice in Texas.

I am not, nor have I ever been, a resident of Texas. I do not own any real property in Texas. My law firm does not have an office in Texas. I do not advertise in Texas.

---

[5] Appellants allege that Doug Maguire "works at the direction of" Pozner.

I have never met Plaintiff Maynard in person. I first became aware of her in late spring of 2019, when I was litigating a defamation case on behalf of Leonard Pozner against James Fetzer in Dane County, Wisconsin. Mr. Fetzer had emailed me about some issues related to a summary judgment motion. Ms. Maynard, who was perhaps bcc'd in Dr. Fetzer's email, replied to all and thereby made it known to me that she was assisting Dr. Fetzer in his defense. On July 2, 2019, Dr. Fetzer and his co-defendant sought interlocutory review of a motion for summary judgment. Their application to the Wisconsin Court of Appeals stated that they had been assisted by Alison Maynard, noted that her license was not active, and listed her Colorado bar registration number. Her ongoing role in the Fetzer case became more apparent a few months later, when I learned that Dr. Fetzer had violated the terms of that court's protective order by disclosing my client's confidential information to unauthorized parties, including Ms. Maynard. Dr. Fetzer contended those disclosures were authorized because Ms. Maynard was assisting him with briefs in that case. He was sanctioned twice for those unauthorized disclosures.

. . .

As a result of her incursions into the Fetzer case, I discovered that Maynard was once a lawyer in Colorado. Based on a simple name search on the Colorado OARC webpage, I learned her license had been suspended and had not been reinstated. I was not able to find any other states in which she was admitted to practice law. Because I believed she was practicing law without a license in the Fetzer case, and had likely engaged in the unauthorized practice of law in cases in Connecticut and Delaware, all of which occurred during the pendency of her Colorado suspension, I reported her to the Colorado disciplinary authorities.

I have never, to my knowledge, had any interactions with Plaintiff Carlisle. I have no personal knowledge about him.

I am aware that Maynard was served in connection with my Unauthorized Practice of Law (UPL) complaint to the Colorado Office of Attorney Regulatory Counsel. I did not personally serve Ms. Maynard. I did not arrange for her to be served by anyone acting on my behalf. I am not employed by, appointed to, or otherwise affiliated with the OARC.

After I submitted the UPL complaint in Colorado, I had several phone calls with the disciplinary authorities assigned to investigate, and eventually prosecute, the matter. I also exchanged a handful of emails with those OARC employees. I was never physically present in Texas for any of those communications.

I was physically located in Minnesota when I sent the UPL complaint to the OARC. I was physically located in Minnesota when I communicated with the OARC regarding the Halbig emails. I testified by phone during Maynard's UPL disciplinary hearing, and I was physically present in Minnesota during that phone call.

**D.      Analysis**

Appellants' three claims present two possible bases for specific jurisdiction.  The first basis relates to the claims for damages because of "illegally intercepted emails" and "conspiracy."  The gravamen of this first possible basis for specific jurisdiction is that Zimmerman, a Minnesota attorney, forwarded "illegally intercepted emails" drafted by Maynard in a Wisconsin lawsuit to the Colorado OARC as part of Zimmerman's complaint regarding Maynard's alleged unauthorized practice of law.  In appellants' reply brief, they allege that Zimmerman was "in close communication" with Bankston to "illegally" access Maynard's "Texas [email] account[.]"  Momentarily setting aside the "Texas [email] account" allegation and assuming without deciding that these allegations may be teased out of appellants' pleaded claim of "conspiracy," Zimmerman testified by affidavit that, "Ms. Maynard, who was perhaps bcc'd in Dr. Fetzer's email, replied to all and thereby made it known to me that she was assisting Dr. Fetzer in his defense."  In addition to the affidavit testimony that we have already recounted, Zimmerman also averred:

> I was not physically present in Texas at any point during August of 2018, when the Halbig emails were transmitted.  I did not intercept the Halbig emails.  To be even more specific in light of the relevant statutory language: I did not use any electronic, mechanical, or other device to acquire any of the Halbig emails at the time those emails were being transmitted to or from any of the Plaintiffs or Mr. Halbig.  Nor did I procure any other person, much less any person in Texas, to intercept or endeavor to intercept the Halbig emails.

Assuming without deciding that Maynard's email was a "Texas account," Zimmerman negated appellants' jurisdictional allegations on a factual basis by denying those allegations.  *Brady v. Kane*, No. 05-18-01105-CV, 2020 WL 2029245, at *12 (Tex. App.—Dallas Apr. 28, 2020, no pet.) (mem op.) ("We conclude [special appearance movant's] testimony negated [plaintiff's] jurisdictional allegations on a factual basis by denying those allegations.").

The second basis relates to the claims for intentional infliction of emotional distress and "conspiracy." Appellants' live petition alleges that "Zimmerman jointly planned and assisted Pozner in this vicious campaign to destroy me." They also allege that "the conduct of Pozner, Maguire, and Zimmerman has been and continues to be extreme and outrageous, and has caused me severe emotional distress, as they intended. I am entitled to actual and punitive damages for their targeting of me." None of these pleaded allegations reference Zimmerman's contact with Texas. *See BMC Software Belgium*, 83 S.W.3d at 793 (providing that the plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident defendant within the provisions of the [Texas] long-arm statute.").

Threaded through all of appellants' arguments is a reliance on the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783, 787–89 (1984) and applied by various courts throughout the years. Appellants misread *Calder*. Since its issuance, the U.S. Supreme Court has "clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable, reiterating that mere injury to a forum resident is not a sufficient connection to the forum." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) (citing *Walden v. Fiore*, 571 U.S. 289–91 (2014)). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290. The proper question is not whether appellants experienced an injury or effect in a particular location, but whether Zimmerman's conduct connects him to Texas in a meaningful way. *Sangha*, 882 F.3d at 103–04. Maynard's presence in San Antonio is largely a consequence of *her* relationship with the forum, and not of any actions Zimmerman took to establish contacts with the forum. *Id*. at 104.

We overrule appellants' sole issue.

### III. CONCLUSION

We affirm the trial court's order granting Zimmerman's special appearance.


Rebeca C. Martinez, Chief Justice